# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

FILED/REC'D

2026 JUL -9 P 12: 29

CLERK OF COURT
U.S. DISTRICT COURT
WD OF WI

**EDWARD A. SIEVERDING,**
   Plaintiff,

v.

Case No. 26-cv-_____    CV  627  WMC

**KORITZINSKY & KARLS, LLC,**
**KORITZINSKY LEGAL GROUP LLC,**
**JAY D. KORITZINSKY,**
**MANTEI, LLC, and**
**APEX PROPERTY MANAGEMENT, INC.,**
   Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Edward A. Sieverding
*Pro Se*

31 Majestic Ave
Pelham, NH 03076
(608) 313-4818
Ed.Sieverding@gmail.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

FILED/REC'D
2026 JUL -9 P 12: 30
CLERK OF COURT
U.S. DISTRICT COURT
WD OF WI

EDWARD A. SIEVERDING,
31 Majestic Ave
Pelham, NH 03076,

   Plaintiff,

Case No. 26-cv-_____

    v.

26 CV 627 WMC

JURY TRIAL DEMANDED
KORITZINSKY & KARLS, LLC,
Suite 300, 414 D'Onofrio Drive,
Madison, WI 53719 (R.133; R.147),

KORITZINSKY LEGAL GROUP LLC,
successor to Koritzinsky & Karls, LLC,
Suite 300, 414 D'Onofrio Drive,
Madison, WI 53719,

JAY D. KORITZINSKY,
Suite 300, 414 D'Onofrio Drive,
Madison, WI 53719,

MANTEI, LLC,
c/o registered agent Apex Property Management, Inc.,
1741 Commercial Ave, Madison, WI 53704-4747
(principal office: 329 Island Dr, Madison, WI 53705-4501)
(DFI record, R.103/Ex. 47),

and

APEX PROPERTY MANAGEMENT, INC.
,
1741 Commercial Ave, Madison, WI 53704-4747 (DFI
records, R.95; R.103),

   Defendants.

COMPLAINT FOR DAMAGES UNDER THE FAIR
DEBT COLLECTION PRACTICES ACT,

1

15 U.S.C. § 1692 ET SEQ., AND THE WISCONSIN
CONSUMER ACT

## NATURE OF THE ACTION

## NATURE OF THE ACTION

1. This is an action for money damages by a pro se consumer against a law firm, its principal attorney, a concealed creditor, and the creditor's collection agent, who together used false, deceptive, and unfair means to collect a purported residential-rent debt — including demands for amounts that no executed instrument fixed and that statutorily void instruments purported to impose, threats of statutory double rent the law does not permit on these facts, false statements about what a court had decided, and years of collection — throughout Plaintiff's tenancy — under names not the creditor's own. Plaintiff seeks actual damages, statutory damages, and costs under 15 U.S.C. § 1692k, and statutory damages, augmented recovery, and fees under the Wisconsin Consumer Act. Plaintiff seeks money damages only: nothing in this Complaint seeks possession of any premises, vacatur of any judgment or writ, or review of any state-court order.

## JURISDICTION AND VENUE

1a. This action follows the money. Wisconsin law declares a residential lease containing any provision listed in Wis. Stat. § 704.44 "void and unenforceable." Every instrument in Plaintiff's seven-year tenancy carried such provisions while representing itself, in writing, as a lawful lease. Plaintiff paid — every dollar before he discovered the truth — to Apex, at rates and for a counterparty no executed instrument ever established. Defendant Mantei, LLC, the concealed owner, appears on no lease Plaintiff ever signed. When Plaintiff discovered the defects and said so under oath, Defendants' response was to keep his final $1,570, keep his $425 deposit past the statutory deadline without the required statement, threaten statutory double rent, and — after swearing no lease existed — invoke "the last written lease" to destroy his property.

2

**2.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Counts I–IV and Count V (false name) arise under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and under 15 U.S.C. § 1692k(d), which authorizes an action "in any appropriate United States district court" within one year from the date on which the violation occurs.

**3.** This Court has supplemental jurisdiction over the Wisconsin Consumer Act count under 28 U.S.C. § 1367(a): the state-law count arises from the same course of debt-collection conduct — the same letters, demands, deposits, retentions, and litigation communications — and forms part of the same case or controversy.

**4.** Venue is proper in this district under 28 U.S.C. § 1391(b)(2): a substantial part of the events giving rise to the claims occurred in this district — the collection campaign was directed at a Madison, Dane County, Wisconsin residence; the demand letters issued from and concerned Dane County; and the eviction action through which part of the collection was pursued was filed and litigated in Dane County.

**5.** This action is timely commenced. Each communication and collection act alleged in ¶¶ 39–51 below is a discrete act occurring on or after July 7, 2025, within one year of the commencement of this action; where a limitations deadline fell on a Saturday, Sunday, or legal holiday, the period runs to the next business day, Fed. R. Civ. P. 6(a)(1)(C). The Wisconsin Consumer Act count is timely under Wis. Stat. § 425.307(1), which runs from the date of the last violation, as alleged in the Wisconsin Consumer Act count (master ¶ 117; ¶ 111 after Variant-A renumbering).

**6.** Plaintiff commenced this action by filing this Complaint, Fed. R. Civ. P. 3, and will effect service within the time allowed by Fed. R. Civ. P. 4(m). Plaintiff demands a jury trial on all triable issues, Fed. R. Civ. P. 38(b).

3

## THE PARTIES

**7.** Plaintiff Edward A. Sieverding ("Sieverding" or "Plaintiff") is a natural person now residing at 31 Majestic Ave, Pelham, New Hampshire 03076. At all times relevant to this Complaint he resided at 333 Island Drive, Apartment 3, Madison, Wisconsin, which was his home. He appeared pro se, without counsel, at all times in every matter described below.

**8.** Sieverding is a "consumer" within the meaning of 15 U.S.C. § 1692a(3): he is a natural person obligated or allegedly obligated to pay a "debt" within the meaning of 15 U.S.C. § 1692a(5). The obligation Defendants sought to collect — purported rent and related charges for the apartment in which he lived — arose out of a transaction the subject of which was his housing, and the money demanded was for personal, family, and household purposes: the apartment was his residence, not a business premises, and he used it exclusively as his home. The FDCPA's "debt" definition reaches all such consumer payment obligations without any credit-extension requirement, *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325–26 (7th Cir. 1997); residential rent satisfies that standard, and courts so hold. *See Romea v. Heiberger & Assocs.*, 163 F.3d 111, 114–16 (2d Cir. 1998) (back rent is a "debt"; a law firm's rent demand is FDCPA-covered) (persuasive).

**9.** Defendant Koritzinsky & Karls, LLC (the "Firm") is a Wisconsin law firm; at all times relevant to the violations alleged below it practiced under that name, which appears on the letterhead and signature blocks of the communications at issue (R.51, Aug. 4, 2025 letterhead; R.191, Oct. 29, 2025 signature block). Its principal office is at Suite 300, 414 D'Onofrio Drive, Madison, Wisconsin 53719 (the address on its own filings, R.133; R.147).

**9a.** Defendant Koritzinsky Legal Group LLC ("KLG") is a Wisconsin law firm and, on information and belief, the successor of the Firm: by May 2026 the same practice, at the same office, with the same principal attorney, was signing filings in the parties' litigation as "Koritzinsky Legal Group LLC" (Doc 1114919, signature, May 1, 2026; Doc 1118129, May

4

11, 2026). KLG is joined as the Firm's successor: on information and belief it is a mere continuation of the Firm — same attorneys, same clients, same office, same practice — and carries successor liability for the Firm's conduct alleged below; in the alternative, discovery will show which entity holds the Firm's liabilities. References to "the Firm" below refer to Koritzinsky & Karls, LLC and, by successor liability, to KLG. (Ethan T. Miller, State Bar No. 1045951, appears in the papers but is not a defendant.)

10. Defendant Jay D. Koritzinsky ("Koritzinsky"), Wisconsin State Bar No. 1005928, is an attorney and a principal of the Firm, with a business address at Suite 300, 414 D'Onofrio Drive, Madison, Wisconsin 53719 (R.133; R.147). He signed the eviction complaint described below (R.3) and authored the collection letters and briefs described below (R.7; R.25; R.51; R.91; R.110; R.150; R.162; R.191).

11. The Firm and Koritzinsky are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6): they are attorneys who regularly collect or attempt to collect consumer debts owed or asserted to be owed to another, including through pre-suit demand letters and through litigation. Attorneys who regularly engage in consumer-debt-collection activity, including litigation, are debt collectors under the Act. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). The regularity of the practice is pleaded from Defendants' own documents: Koritzinsky represented to the circuit court, in writing, that bifurcated rent-and-possession collection "is already how these cases are handled" (R.51) — the Firm describing its own recurring practice in cases of exactly this kind; and the Firm's letterhead reflects a multi-attorney practice engaged in that work (R.150). In further support, on information and belief, the public case records associated with State Bar No. 1005928 reflect a recurring volume of eviction and rent-collection actions.

12. Defendant Mantei, LLC ("Mantei") is a Wisconsin limited liability company whose registered agent is Apex Property Management, Inc., 1741 Commercial Ave, Madison, Wisconsin, and whose registered principal office is 329 Island Drive, Madison, Wisconsin —

5

on the same street as, and steps from, the premises it concealed its ownership of (DFI record, R.103/Ex. 47). As public property records reflect, Mantei has owned the property at 333 Island Drive since 2010. Mantei was the plaintiff in the eviction action described below and is the person for whose benefit the amounts described below were demanded and collected. As pleaded in the alternative in Count V, Mantei is itself a "debt collector" under the final sentence of 15 U.S.C. § 1692a(6): a creditor "who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."

13. Defendant Apex Property Management, Inc. ("Apex") is a Wisconsin corporation at 1741 Commercial Ave, Madison, Wisconsin 53704 (the DFI records at R.95/R.96 show it serving as registered agent for the affiliated entities at that address). Apex issued the notices, ledgers, demands, deposit dispositions, and the refund instrument described below, in each instance collecting or attempting to collect amounts asserted to be owed to Mantei.

14. Apex is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6): it regularly collects or attempts to collect debts owed or asserted to be owed to another (Mantei). Section 1692a(6)(B) excludes from that definition only "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." Whether Apex can claim that exception — or any other statutory exclusion, including the exclusion for obligations not in default when obtained, 15 U.S.C. § 1692a(6)(F) — turns on facts exclusively within Defendants' possession: whether Apex and Mantei are related by common ownership or affiliated by corporate control, whether Apex acts only for persons so related or affiliated, whether collection is Apex's principal business, and whether the obligations were in default when Apex obtained them. Plaintiff pleads on information and belief that no exclusion applies.

6

**15.** At all relevant times each Defendant acted individually and as the agent of the others within a common collection undertaking: Apex demanded and processed payments for Mantei; the Firm and Koritzinsky demanded, sued for, and defended the retention of those payments for Mantei; and Mantei directed, ratified, and retained the proceeds of the conduct of each.

## CONCRETE INJURY

**16.** Defendants' collection conduct inflicted concrete, particularized, economic injury on Sieverding. First, Defendants retain $1,570 of his money. Of the $1,570 in cashier's checks Sieverding tendered and Apex deposited for July and August 2025, Defendants purported to refund $1,380 while keeping $190 (R.137; R.138) — a retention whose arithmetic is the landlord side's own: $190 equals two months of the $95 monthly difference between the $880 demanded and the $785 basis, as counsel himself explained on the trial record (R.185:19–20). Sieverding, however, voided the $1,380 check and delivered it back to Defendants' counsel (R.138, the check bearing the handwritten "VOID"); that tender was never accepted, and the full $1,570 remains in Defendants' hands today — money that, having been paid more than one month in advance, constitutes part of his security deposit under Wisconsin law (¶ 19).

**17.** Second, Sieverding actually paid, month over month beginning in March 2023, the $95 monthly exactions Defendants demanded — $880 demanded and collected against the $785 the last executed instrument states (R.119; R.16 p.5; ledger, R.104). These sums are pleaded as what Defendants took under an instrument that, as alleged below, was statutorily void and authorized nothing — the measure of Defendants' taking, not of any lawful rent, and not a disappointed price expectation.

**17a.** The taking was knowing. Defendants' own internal correspondence — produced into the record by Sieverding — shows the unit's condition never supported its price: in July 2020 Apex's principals wrote each other that the unit "would be a good candidate for a remodel rather than discounting the rent for him" and that they "could keep him here at a discount until

7

we have one come available" (R.83), while telling Sieverding the unit "should be remodeled" and promising showings of better units that never came (R.83). Twelve days later the same principal conceded it all in writing: "I have no reason to disagree with anything you have written. Your proposal to continue at $785 is fine. We will send you a renewal document at that price. I am sorry for the issues you had with [the leasing agent]." (R.16 p.5; R.9 Decl. ¶ 10). Five years later the same principal — writing as "Chairman of the Board" of Apex Enterprises Inc while deciding the tenancy of Mantei's property — told Sieverding he had "lived in that apartment, at a discounted rate, for 6 years," that he "paid what we asked," and that "I don't believe you were overcharged" (R.16 pp.6-7): the same word, "discount," their internal email used as strategy, now deployed as denial. The promised remodel never happened; the promised units were never shown; the rate was raised anyway. And when the instruments' invalidity surfaced, Defendants' response was differential: they issued the departed co-tenant a $0.00 deposit disposition (¶ 34; R.14; R.87) — releasing her, after she had "skip[ped] five months of rent" under the very invalidity Defendants' own employees had confirmed (R.16 p.8) — while escalating demands, notices, and suit against the tenant who remained and paid. That is concealment operating as collection policy, not a rent dispute. And the invalidity was known early: Sieverding's May 2025 letters record that in August 2023 — five months into the $880 demands — Apex's own employee deemed the tendered lease invalid for want of the co-occupant's signature, and that the manager who signed the April 2025 termination notice and later swore at trial that no written lease existed had confirmed in writing that "Apex does not retain unsigned leases" (R.16 p.8; R.22 p.4). Defendants collected the unauthorized rate for twenty-one more months after their own employee called the instrument invalid. Nor was any of it new: Apex has been adjudicated for security-deposit violations before — a 2007 Wisconsin Court of Appeals decision affirmed damages and fees against it for failing to provide a timely deposit refund and accounting (Todd v. Apex Property Management, Inc., No. 2006AP502 (Wis. Ct. App. 2007) (unpublished), noticed of record at

8

R.9) — so the deposit-accounting duties it violated here were duties it had litigated and lost on eighteen years earlier.

**17b.** Sieverding had long believed he was overpaying for a deficient unit — his 2020 correspondence documents cut- and burn-scarred counters, damaged flooring, failing fixtures, and a bait-and-switch from the unit originally shown (R.83) — but he did not and could not know that the instruments carried statutorily void clauses until he re-collected complete copies of his lease papers on July 1-2, 2025 (the record exhibit's own print headers bear the date, R.83) and reviewed them; his sworn assertion of the defects followed within weeks (R.9 ¶ 2, July 24-25, 2025). A defrauded consumer does not know the measure of his loss while the concealment operates: the writing said gold; the experience was lead; and the papers that proved it were papers Defendants wrote and Sieverding had to reassemble himself.

**18.** Third, Sieverding incurred actual damages beyond the sums taken: itemized out-of-pocket costs directly responding to the unlawful demands and communications (postage, copying, filing, and transcript costs); the costs of the unexpected, compelled move the collection course produced; and the value of personal property destroyed after judgment when, following the sheriff's indication that his property would go to storage, it was instead disposed of (R.179; ¶ 91), to be itemized in discovery.

**19.** Fourth, after entry of judgment in the eviction action, Defendants returned to Sieverding only $425 of his security deposit. The deposit comprised the named $425 security deposit (R.176:1; R.179:1-2) plus the $1,570 in July and August 2025 rent payments that, having been paid more than one month in advance, constitute part of the security deposit under Wisconsin law. The $425 was a partial refund check — dated September 9 and postmarked September 10, 2025, within the 21-day window that ran from the August 25, 2025 writ execution (R.176) — which Sieverding cashed. It came with no disposition statement itemizing any deduction, then or ever ("no itemized disposition, no explanation, and not even a memo on the check," R.179)

9

— the statement ATCP 134.06(4) requires before any expense may be claimed against a deposit — and Defendants retained the remaining $1,570 of deposit without any accounting at all. Defendants also withheld personal property, including medication (R.179). These post-judgment acts accrued after the August 8, 2025 judgment and are pleaded from their own post-judgment accrual dates.

20. Each injury above is fairly traceable to Defendants' collection acts — the demands, the deposits, the retention, and the litigation communications alleged below — and is redressable by an award of money damages.

21. Only in addition to, and dependent upon, the economic injuries above, Sieverding suffered attendant intangible harms from the same acts. No count in this Complaint rests on intangible harm alone.

22. The injuries alleged in ¶¶ 16–21 are concrete injuries in fact within the meaning of Article III: money actually taken and retained, money actually paid out under unlawful demands, and out-of-pocket loss — classic pocketbook injury — traceable to Defendants and redressable here.

## FACTUAL ALLEGATIONS

### A. The purported instrument was statutorily void, and authorized nothing

23. Sieverding resided at 333 Island Drive, Apartment 3, Madison, Wisconsin for approximately seven years. Throughout, the premises were held out to him under the names "Stone Ridge Apartments" and "Apex Property Management." Mantei, LLC — the actual owner since 2010 (¶ 12) — appears on none of the lease documents (R.143 p.1; R.19; R.20; R.119).

24. No executed instrument authorized the amounts Defendants demanded. The instrument chain is fixed by Defendants' own record: the executed 2018 lease and its Concession

10

Addendum (R.19); the executed 2020 lease — the last lease executed by all parties — fixing rent at "$785 per month including all fees" (R.119); a 2023 renewal form the landlord side tendered but that was **never executed** (R.143) — as the landlord's own agent confirmed in writing in September 2023: the form "was only signed by" one occupant "and not Edward, or apex," leaving the occupants "not under a lease with apex beyond a month to month," and the remaining occupant "will just need to sign a new lease" going forward (R.10 p.1; R.88; R.89) — no new lease was ever signed; as a second manager confirmed, "Apex does not retain unsigned leases" (R.16 p.8); and as Apex's own system recorded, the tendered form was formally canceled on April 5, 2024 — in a notice sent to Sieverding's email yet addressed to the co-occupant ("A lease sent to you on 01/13/2023 has been canceled," R.81) — after which Defendants collected the $880 that form purported to set for another full year; and, from March 2023 forward (Sieverding's May 2025 letter within R.16: "From March 2023 to April 2025, Apex charged $880 per month without a valid lease" — $2,470 = 26 months × $95 (R.16 p.8; accord R.22 pp.4-5)), a demanded $880 rate that no executed instrument fixed. The landlord side's own witness swore no written lease existed and called the tenancy "[m]onth-to-month" (R.185:6), and the circuit court found "There is no lease" (R.185:21).

**25.** The executed instruments carry a clause Wis. Stat. § 704.44 declares renders a residential rental agreement "void and unenforceable": the Concession Addendum (R.19) purports to require, upon early termination, repayment of concession amounts and accelerated sums — a rent-acceleration device of the kind § 704.44(3m) prohibits and the kind *Koble Investments v. Marquardt*, 2026 WI 19, ¶ 17, identifies as prohibited by law (§ 704.44(3m); ATCP 134.08(3)).

**26.** The tendered 2023 form — the terms Defendants held out and charged under, never executed — added a clause providing that "Tenant(s) will indemnify Landlord for any loss" (R.143 p.4), imposing liability on the tenant for damage to the landlord's property regardless of cause, the liability Wis. Stat. § 704.44(7) forbids. Those terms are pleaded as the content of the

11

arrangement Defendants asserted and enforced, not as terms of an executed lease.

**27.** By the statute's own command, a residential rental agreement containing any such clause "is void and unenforceable." The executed instruments were therefore void; the tendered 2023 form was never executed at all; and the $880 demanded from March 2023 forward (¶ 24) was fixed by no instrument of any kind. Nothing — no valid agreement and no statute — expressly authorized or permitted the charges, fees, accelerations, or demands alleged below.

**28.** The last agreed basis between the parties to the papers was $785 per month (R.119; R.16 p.5). Beginning in March 2023, the demand was raised to $880 per month, and Sieverding paid the difference month over month (¶ 17).

**29.** The enforcement record Defendants themselves created reflects a twelve-month-arrangement posture: the Special Conditions document (R.119), the Bosben email (R.16 p.5), and the deposited-check memo "12 Month lease August Rent" (¶ 37) each reflect what Defendants demanded and enforced. These facts are pleaded solely as Defendants' own enforcement conduct.

**30.** Nothing in this Complaint concedes that any tenancy — periodic or otherwise — or any rent obligation arose from, survived, or exists notwithstanding the void instrument; Plaintiff's position throughout is that the instrument is void and authorized nothing.

**31.** In the alternative, and without conceding any tenancy or any rent obligation (¶ 30): even if a court were to apply the periodic-tenancy passage of *Koble Investments v. Marquardt*, 2026 WI 19, ¶ 28, to this occupancy, that passage does not authorize the $880 demands. First, ¶ 28's own gloss of the obligation it describes is periodicity — "in this case, on a monthly basis" — not any particular amount. Second, the passage fixes the basis as the rent the tenant "had been paying rent *under the lease*" (emphasis added): in *Koble* the payments were referable to an executed lease assumed void, while here the $880 was referable to no instrument at all — the 2023 form was never executed, the landlord's witness swore no written lease existed (R.185:6),

and the court found "no agreement for 880" was ever made (R.185:21) — so the only lease-referable basis in this record is the executed 2020 lease's $785 (R.119; R.16 p.5). Third, no notice, writing, or assent ever effected the $880 increase — no instrument was executed and no notice that could lawfully change the rate of a periodic tenancy was ever served — and Apex's own manager put the contrary position in writing: the rate was imposed "whether you signed or not," with Sieverding "in default each time for not renewing and signing the lease we offered" (R.142) — a unilateral imposition, not an agreement. On ¶ 28's own terms, then, the $880 demands, the retention of the prepayments, and the § 704.27 double-rent assertions alleged below exceeded any amount even arguably permitted by law or authorized by any agreement.

**31a.** Assent requires knowledge. Every payment Plaintiff ever made preceded his discovery of the instruments' voidness (R.9 ¶ 2), and Defendants refused the last tenders outright — accepting, then "refunding," then voiding their own refund check and retaining the full $1,570. Payments made in reliance on a writing that held itself out as a valid lease are referable to that represented bargain. They are not evidence of a meeting of the minds on an undisclosed counterparty, an unwritten arrangement, or a rate — $880 — that no executed instrument ever contained. The last executed instrument states: "Rent is $785 per month including all fees."

**B. The pre-suit collection course (pattern and context)**

**32.** On April 28, 2025, Apex, by its property manager Melanie McMahon, issued a 28-day notice — invoking Wis. Stat. § 704.19, stating no reason, and addressed to Sieverding, the departed co-tenant, "and all others" — purporting to terminate what its own face called a "month-to-month tenancy" as of May 31, 2025 (R.135).

**33.** On May 8, 2025, Apex issued a 5-day notice to pay or vacate demanding "$95.00" — precisely the monthly difference between the $880 demanded and the $785 the last executed instrument states — with an attached account ledger, created the same day, whose final line

13

totals exactly the demanded $95.00: the unpaid May 2025 difference between the $880 charged and the $785 Sieverding had paid on May 1 (R.44). The notice's own face required payment or removal "on or before Monday, March 31st, 2025" — a deadline five weeks in the past when the notice issued — was addressed to both Sieverding and the departed co-tenant, and named the issuer as "Apex Property Management, LLC," an entity form that does not match the registered corporation (¶ 13).

34. On May 9, 2025, Apex sent a deposit-disposition letter addressed to the departed co-occupant Willcockson reflecting a $0.00 balance (R.14; R.87) — a release of the co-tenant's asserted obligations issued in the same weeks Defendants escalated notices, demands, and suit against Sieverding on the same instruments (¶ 17a).

35. On May 20, 2025, Koritzinsky, on Firm letterhead, sent a demand letter directly to Sieverding stating that his occupancy was "terminated as of June 30" and that his client would have "no option but to file an eviction action" (R.91 = R.18 p.5). The same letter conceded the premise in the Firm's own words — "in the absence of a written lease, you are a month-to-month tenant" (R.91) — and identified the Firm's client, and the threatened plaintiff, as "Apex Property Management, Inc."; the action that followed was filed by Mantei (¶ 40). This was the Firm's initial communication with Sieverding in connection with the purported debt.

36. On June 2, 2025, Apex deposited Sieverding's $785 cashier's check bearing the memo "July rent" (R.98: the cashier's check; R.12 p.1: its deposit endorsement, account #175265, stamped 2025-06-02).

37. On June 30, 2025, Apex deposited Sieverding's second $785 cashier's check bearing the memo "12 Month lease August Rent" (R.98: the cashier's check; R.12 p.2: its deposit endorsement, account #175265, stamped 2025-06-30).

**38.** On the same day — June 30, 2025 — McMahon sent Sieverding a refund letter purporting to return $1,380 of the $1,570 deposited, retaining $190, stating that the landlord side was "proceeding with the previously issued 28-day notice" and that "[o]ur attorney will be filing" (R.137; R.138). The refund check drew on the "Stone Ridge Operating Account" (R.138). Sieverding voided that check — the record copy bears the handwritten "VOID" (R.138) — and delivered it back to Defendants' counsel; the $1,380 was never accepted, and the full $1,570 remains with Defendants (¶ 16).

## C. The live-window collection ladder (each act a discrete violation with its own limitations clock)

**39.** Each communication and act alleged in ¶¶ 40–51 was a discrete act of debt collection in connection with the purported rent debt, undertaken by or at the direction of the Firm and Koritzinsky on behalf of Mantei, with Apex executing the account-side steps. Each is pleaded as a separate violation with its own limitations clock.

**40.** On July 7, 2025, Mantei — an entity named on no lease document Sieverding had ever been given — filed an eviction complaint against him in Dane County Circuit Court, Case No. 2025SC004417, signed by Koritzinsky and pleading an account narrative of amounts arising under the void instrument (R.3; clerk-issued July 8, R.1). This filing is pleaded as a collection attempt in the alternative, as set out in Counts I and IV.

**41.** On July 11, 2025, at 1:05 p.m., the summons and complaint were personally served on Sieverding (R.8, Declaration of Service, filed July 15, 2025) — delivery of the collection demand to the consumer himself.

**42.** By letter dated July 12, 2025 (filed July 14), Koritzinsky wrote the clerk to dismiss the departed co-occupant Willcockson from the action, with a copy mailed directly to Sieverding (R.7).

15

**43.** By letter dated July 21, 2025, on Firm letterhead, Koritzinsky wrote directly to Sieverding banning him from the Apex offices and all Apex-managed properties, with a copy to the Madison Police Department (R.110 = R.18 p.1).

**44.** On July 26, 2025 — the day after Sieverding hand-delivered his seven-document answer and counterclaim bundle (R.9; R.40; dated July 25, 2025) — his electronic tenant-portal access, the sole means Defendants provided for viewing his own account ledger and payment history, was disabled (R.31 pp.2-3).

**45.** By letter dated July 28, 2025, with a copy mailed to Sieverding, Koritzinsky wrote the clerk that Sieverding's counterclaims against Mantei "are denied" and that the Apex entities and Bruce Bosben are "not parties" (R.25). No court had ruled on the counterclaims; none ever did (¶ 55).

**46.** By letter filed August 4, 2025, Koritzinsky opposed rescheduling the eviction trial, representing to the court that the eviction issue would be "heard first," that "the remaining issues (i.e., his counterclaims)" would be "heard thereafter," and that this sequence "is already how these cases are handled" (R.51). The trial date held; the "thereafter" never came (¶ 55).

**47.** On August 8, 2025, at trial, Koritzinsky made statements on the record concerning the account and the papers, including the explanation that the $190 withheld from the refund represented two months of the $95 difference (R.185:19–20).

**48.** By letter filed August 11, 2025, opposing a stay, Koritzinsky told the court and the pro se litigant that the stay request had been "denied" — when the transcript shows the court had said "[t]hat's up to the landlord and their counsel" (R.150; R.185:22).

**49.** By letter dated and filed August 13, 2025, attacking the undertaking, Koritzinsky asserted that statutory double rent under Wis. Stat. § 704.27 was accruing against Sieverding and that "$1.00 is completely insufficient" (R.162).

**50.** On October 29, 2025, Koritzinsky's side served directly on pro se Sieverding an opposition brief representing an account narrative of sums owed, asserting that Sieverding "would owe double rent ... were they to bring that claim," and stating that the "only issue decided was possession" (R.191).

**51.** Sieverding received each letter and brief above himself: each was mailed or served directly to him, the consumer, with no attorney intermediary.

**D. The direct-to-consumer posture**

**52.** Sieverding appeared pro se at all times in the eviction action and in every exchange described in this Complaint. Every demand, notice, letter, and brief alleged above was delivered directly to the consumer himself.

**53.** The Seventh Circuit holds that "representations may violate § 1692e of the FDCPA even if made in court filings in litigation" where they reach the consumer. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811-13 (7th Cir. 2016) (quote verbatim-verified from the opinion, 2026-07-04; *accord Kaymark*, 783 F.3d 168 (3d Cir.)); *cf. O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011) (communications aimed only at the judge are not actionable). Two of the communications here were purely extra-judicial: the May 20, 2025 demand letter (R.91) and the July 21, 2025 ban letter copied to the Madison Police Department (R.110). The rest — the July 12, July 28, August 4, and August 11 letters, and the October 29 brief — were each mailed to Sieverding separately and in addition to any court filing ; each demanded, defended, or justified the taking or retention of his money; and each conveyed representations about the debt, the account, and his legal position to him, the pro se debtor, whom the unsophisticated-consumer standard exists to protect.

**E. Nothing pleaded here was ever decided**

**54.** The judgment in the eviction action was for possession only, in the amount of $0.00 (R.147). No money claim was adjudicated.

17

**55.** Mantei's own filings, the circuit court's order, and the record each confirm that Sieverding's counterclaims were never decided — claim by claim, in his adversary's own words: the October 29, 2025 brief states twice that "[t]he only issue decided was possession of the premises," states that the tendered-rent claim "has not been decided by this Court or any other Court," and states that "the issue of his personal property has not been decided by any Court" (R.191); the November 18, 2025 record confirms the counterclaims were never decided (R.196; R.211).

**56.** Accordingly, no claim or issue pleaded in this Complaint was litigated or determined in the eviction action, and this Complaint seeks no review of any order entered there (¶ 1; Prayer).

**F. The post-decision legal status of the amounts demanded**

**57.** On June 5, 2026, the Wisconsin Supreme Court decided *Koble Investments v. Marquardt*, 2026 WI 19. At ¶ 17, the court stated that rent-acceleration clauses of the kind the executed Concession Addendum contains (¶ 25) are prohibited by law (§ 704.44(3m); ATCP 134.08(3)).

**58.** *Koble* is pleaded here for its ¶ 17 statement of the governing law and for the disclosure set out in Count VI (¶ 108). The legal-status allegation of this Complaint — that sums demanded under instruments carrying § 704.44-prohibited clauses, or under no executed instrument at all, were not permitted by law and not authorized by any valid agreement — is Plaintiff's contention from the statutes' own text (¶¶ 24–27), not an asserted *Koble* holding. Defendants — including a law firm regularly engaged in landlord-tenant collection (¶ 11) — knew or are charged with knowing the content of § 704.44 at all relevant times. The further disclosure concerning *Koble*'s treatment of Wis. Stat. ch. 427 is set out in Count VI, ¶ 108.

18

## G. Collection under names not the creditor's own, throughout the tenancy

59. Mantei has owned the property since 2010 (¶ 12). Throughout Sieverding's tenancy — 2018 to 2025 — Mantei never disclosed itself to him as his creditor: it appears on no lease paper given to him (R.143 p.1; R.19; R.20; R.119). The one owner name any lease paper ever gave him was "Richard Mantei," an individual, not the record owner (R.143 p.1).

60. Every demand, notice, ledger, and account communication ran under the names "Apex Property Management" or "Stone Ridge" (R.44; R.86; R.14; R.87; R.135; R.119).

61. The June 30, 2025 refund check itself drew on the "Stone Ridge Operating Account" (R.138).

62. The concealment was complete enough that Mantei's own counsel wrote, in the July 28, 2025 letter, that the Apex entities are "not parties" (R.25) — while every collection contact Sieverding had ever received had come from Apex or "Stone Ridge."

63. The first time the name "Mantei, LLC" was presented to Sieverding as his creditor was as the plaintiff on the eviction summons and complaint (R.3) — an entity with no disclosed relationship to him or to the papers he had signed. The suit did not end the false-name practice: the collection-side instruments continued to move under the assumed names afterward (¶¶ 61, 91), and the September 2025 deposit transaction was administered under the same architecture.

## COUNT I — FDCPA, 15 U.S.C. § 1692e(2)(A): FALSE REPRESENTATION OF THE CHARACTER, AMOUNT, OR LEGAL STATUS OF A DEBT

**(Against Koritzinsky & Karls, LLC and Jay D. Koritzinsky)**

64. Plaintiff realleges and incorporates ¶¶ 1–63.

65. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including, § 1692e(2)(A), "[t]he false representation of … the character, amount, or legal status of any debt."

19

66. In the October 29, 2025 brief served directly on pro se Sieverding, the Firm and Koritzinsky falsely represented the character, amount, and legal status of the purported debt: the brief presented an account narrative of sums owed and rested on the premise that Sieverding "would owe double rent ... were they to bring that claim" (R.191).

67. In the August 13, 2025 letter, the Firm and Koritzinsky falsely represented that statutory double rent under Wis. Stat. § 704.27 was accruing against Sieverding and that "$1.00 is completely insufficient" as an undertaking (R.162).

68. Each representation that sums arising under the instrument were legally owing was false: the instrument is void and unenforceable under Wis. Stat. § 704.44 (¶¶ 24–27), a void instrument authorizes nothing, and amounts demanded under it were not permitted by law. Representing such amounts as legally collectible misstates the legal status of the debt. In the alternative, and without any concession (¶¶ 30–31), the amounts represented exceeded any sum even arguably owing on *Koble* ¶ 28's own terms, for the reasons pleaded in ¶ 31.

69. The falsity of the account premise is visible in Defendants' own arithmetic: their refund retained exactly $190 — two months of the $95 monthly difference they had exacted (R.137; R.185:19–20) — sums exacted under an instrument that authorized nothing.

70. In the alternative, the July 7, 2025 eviction complaint itself — an account narrative of amounts owed, filed by an entity with no disclosed relationship to Sieverding and served on him personally on July 11, 2025 (R.3; R.8) — was a false representation of the character, amount, and legal status of the debt. The court of appeals for this circuit has not decided whether a suit-based FDCPA violation accrues at filing, at service, or at the debtor's notice of the suit; other circuits have variously held each. *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (filing); *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (service); *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445, 447–48 (5th Cir. 2013) (notice); and the filing and the service may each be separate violations with separate clocks, *Brown v.*

*Transworld Systems, Inc.*, 73 F.4th 1030, 1040, 1044 (9th Cir. 2023). This action is commenced within one year of the July 7, 2025 filing, and is therefore timely as to this alternative theory under any accrual rule.

**71.** Each representation above was made in connection with the collection of a debt, was material to an unsophisticated consumer, and violated § 1692e(2)(A). Sieverding was damaged as alleged in ¶¶ 16–21.

### COUNT II — FDCPA, 15 U.S.C. § 1692e(5): THREAT TO TAKE ACTION THAT CANNOT LEGALLY BE TAKEN OR THAT IS NOT INTENDED TO BE TAKEN

**(Against Koritzinsky & Karls, LLC and Jay D. Koritzinsky)**

**72.** Plaintiff realleges and incorporates ¶¶ 1–63.

**73.** Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

**74.** In the October 29, 2025 brief served directly on pro se Sieverding, the Firm and Koritzinsky threatened that he "would owe double rent … were they to bring that claim" (R.191). Plaintiff pleads the statement as what it is — a conditionally phrased threat of a future collection action — which is precisely what § 1692e(5) reaches: the *threat* to take action, not the action itself. Wis. Stat. § 704.27 fixes a holdover tenant's minimum exposure at "twice the rental value apportioned on a daily basis for the time the tenant remains in possession," and addresses by its terms a tenant who remains in possession without the landlord's consent after a tenancy has ended; it presupposes a tenancy to hold over from and an enforceable underlying rental obligation on which a holdover claim could rest. The instrument here is void and unenforceable under Wis. Stat. § 704.44 and supports no such tenancy or obligation (¶¶ 24–27); and, in the alternative and without any concession (¶ 31), no lease fixed any $880 basis, so no lawful double-rent base existed even on a holdover analysis. The threatened double-rent recovery was not a legally available outcome on these facts.

21

75. The threat's premise was further contradicted by Defendants' own conduct and by the calendar: Apex accepted and deposited Sieverding's $785 cashier's checks for July and August (¶¶ 36–37) before the purported refund of June 30, 2025 (R.137) — a tender Sieverding voided and returned (¶ 38) — conduct irreconcilable with the holdover premise on which a double-rent claim would rest. And the double rent threatened in the October 29, 2025 brief addressed a period either already paid — the July and August 2025 rent had been tendered and deposited (¶¶ 36–37) — or after Sieverding surrendered possession upon execution of the writ in August 2025 (R.176), when § 704.27's reach by its own terms ("for the time the tenant remains in possession") had ended.

76. The August 13, 2025 letter made the same threat one procedural lane earlier, asserting accruing double rent under § 704.27 in support of the demand that the undertaking be increased (R.162).

77. Each such statement threatened action that could not legally be taken or that was not intended to be taken, and each was made in connection with the collection of a debt, directly to the consumer.

78. Each threat violated § 1692e(5). Sieverding was damaged as alleged in ¶¶ 16–21.

## COUNT III — FDCPA, 15 U.S.C. § 1692e(10): FALSE REPRESENTATIONS AND DECEPTIVE MEANS

**(Against Koritzinsky & Karls, LLC and Jay D. Koritzinsky)**

79. Plaintiff realleges and incorporates ¶¶ 1–63.

80. Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

81. The August 11, 2025 letter told the court and the pro se litigant that the stay request had been "denied," when the transcript shows the court had said "[t]hat's up to the landlord and their counsel" (R.150; R.185:22). That representation was false.

22

**82.** The July 28, 2025 letter, mailed to Sieverding, declared his counterclaims "are denied" when no court had decided them — and the record later confirmed none ever were (R.25; R.196). That representation was false when made; and even read as counsel's report that his *client* denied the counterclaims, it conveyed to the unsophisticated pro se consumer that his counterclaims had been adjudicated and rejected.

**82a.** The trial record supplies further color on the same course: it was Koritzinsky's own question that supplied the word "verbal" for the arrangement, and the witness's qualification — "There is correspondence by email—" — was cut off mid-answer (R.185:6); and Koritzinsky acknowledged on the record that "they turned off his portals" (R.185:9), the payment-portal termination alleged at ¶ 44.

**83.** The false statements above, delivered on attorney letterhead directly to the pro se consumer (R.25; R.150), were deceptive means bearing the added weight such communications carry with an unsophisticated consumer.

**84.** Each representation was material: it bore directly on whether a pro se tenant would contest the demands, seek a stay, pursue his counterclaims, or pay.

**85.** Each communication above was mailed or delivered directly to Sieverding, the consumer.

**86.** Each act above violated § 1692e(10). Sieverding was damaged as alleged in ¶¶ 16–21.

## COUNT IV — FDCPA, 15 U.S.C. § 1692f(1): COLLECTION OF AMOUNTS NOT PERMITTED BY LAW

**(Against Koritzinsky & Karls, LLC and Jay D. Koritzinsky; in the alternative, Mantei, LLC)**

**87.** Plaintiff realleges and incorporates ¶¶ 1–63.

**88.** Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt," including, § 1692f(1), "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

23

authorized by the agreement creating the debt or permitted by law."

**89.** Every demand in the collection course alleged above rode an instrument that Wis. Stat. § 704.44 declares "void and unenforceable" (¶¶ 24–27). A void agreement expressly authorizes nothing; and a statute that voids the instrument does not permit collection under it. The amounts Defendants demanded and collected therefore satisfied neither branch of § 1692f(1): they were not expressly authorized by any valid agreement creating a debt, and they were not permitted by law. In the alternative, and without any concession (¶¶ 30–31), the amounts demanded and collected exceeded any sum even arguably permitted by law or authorized by any agreement on *Koble* ¶ 28's own terms (¶ 31).

**90.** The double-rent sums asserted in the August 13, 2025 letter and the October 29, 2025 brief (R.162; R.191) were likewise amounts not permitted by law on these facts (¶¶ 74–75).

**91.** After judgment, Mantei and Apex — who held and administered the deposit — returned only $425 — a partial security-deposit refund check, mailed September 10, 2025, that Sieverding cashed — without the security-deposit disposition statement ATCP 134.06(4) requires before any expense may be claimed, and excluding the $1,570 in July and August 2025 advance rent payments that constitute part of the security deposit under Wisconsin law — retaining that balance without any lawful basis — and withheld Sieverding's personal property, including medication (R.179). These post-judgment acts — the unaccounted, short-returned deposit and the property leverage — accrue from their own post-judgment dates and were the collection and retention of amounts, and the taking of leverage, not permitted by law.

**92.** Defendants retained the proof in their own ledger: the $1,570 retained (¶ 16) and the monthly $95 sums actually paid (¶ 17) are money collected through the unfair and unconscionable means alleged, and constitute actual damages.

**93.** In the alternative, the July 7, 2025 filing of the eviction complaint was itself an attempt to collect amounts not permitted by law nor authorized by any valid agreement, for the reasons

24

and on the timeliness alleged in ¶ 70.

**93a.** The Firm's and Koritzinsky's collection demands also ignored the deposit credit the estate concededly owed Sieverding (¶¶ 16, 91): demanding gross sums while the deposit sat unaccounted-for and unreturned collected an "amount" the governing law did not permit, § 1692f(1) — the collector cannot demand the whole while its principal withholds the offset the code commands.

**94.** In the alternative to the Firm and Koritzinsky, Mantei — which directed, ratified, and retained the same sums (¶¶ 32–38, 59–63) — used the same unfair and unconscionable means, subject to the election pleaded in ¶ 128. Apex is not named in this federal Count in light of 15 U.S.C. § 1692a(6)(F); its liability for the same conduct is pleaded under the state-law Counts VII and VIII.

**95.** Each act above violated § 1692f(1). The acts in this Count are collection conduct — retention, exaction, and leverage — and violate § 1692f(1) whether or not any communication accompanying them is separately actionable. Sieverding was damaged as alleged in ¶¶ 16–21.

## COUNT V (IN THE ALTERNATIVE) — FDCPA, 15 U.S.C. §§ 1692e(14), 1692a(6): COLLECTION UNDER FALSE NAMES

**(Against Mantei, LLC)**

**96.** Plaintiff realleges and incorporates ¶¶ 1–63. This Count is pleaded in the alternative, subject to the election stated in ¶ 128.

**97.** Section 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." The final sentence of § 1692a(6) provides that a creditor who, in the process of collecting his own debts, uses any name other than his own indicating that a third person is collecting, is itself a "debt collector." The exception is satisfied where, among other ways, the creditor collecting its own debts "uses a name that falsely implies that a third party is collecting its debts." *Vincent v. The*

25

*Money Store*, 736 F.3d 88, 96-98 (2d Cir. 2013) (verified from the opinion, 2026-07-04; applying *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998)) (persuasive); *cf. Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (FDCPA status follows the collector's own representations) (verified from the opinion, 2026-07-04).

**98.** Mantei — the owner and creditor since 2010 (¶ 12) — collected its own purported debts from Sieverding, throughout his 2018-2025 tenancy, exclusively under names not its own: "Apex Property Management" and "Stone Ridge" (¶¶ 59–63). The use of those names indicated to the consumer that third persons were collecting.

**99.** The refund instrument itself drew on the "Stone Ridge Operating Account" (R.138), and Mantei's own counsel described the Apex entities as "not parties" (R.25) — while Mantei appeared on no paper Sieverding had ever been given until it surfaced as the eviction plaintiff (R.3).

**100.** By collecting its own debts under names not its own, Mantei acted as a debt collector under § 1692a(6) and violated § 1692e(14), and the concealment rendered its collection communications deceptive within § 1692e.

**100a.** The concealment injured Sieverding concretely, in escalating tiers. (i) He incurred the out-of-pocket costs of misdirected process: unable to identify his true creditor, he directed disputes, tenders, and responses to entities whose own counsel later declared them "not parties" (R.25; ¶ 18), and the names on the tendered papers switched without his signature: the 2023 form was transmitted through his own portal yet electronically addressed to the co-occupant, and no landlord agent ever signed it (R.33 pp.2-3; R.10 p.1). (ii) Every dollar of rent he paid during the concealment was paid to an agent for a principal whose identity — and therefore whose ownership, standing, and lawful authority to collect — he was denied any ability to verify, evaluate, or dispute; the disclosure rules exist to prevent exactly that (ATCP

26

134.04(1)), and the sums collected under the false names are the measure of what the concealment extracted (¶¶ 16-17). (iii) He bore the costs and losses of an eviction prosecuted by the concealed stranger itself — an entity in privity with no lease he ever signed (¶¶ 40, 63) — including the compelled move and the post-judgment destruction of his personal property without lawful authority (R.179; ¶¶ 18, 91). Tier (i) independently satisfies Article III; tiers (ii) and (iii) plead the full measure.

101. Apex is not named in this federal Count in light of 15 U.S.C. § 1692a(6)(F); whether any exclusion in fact shields it turns on facts exclusively within Defendants' possession (the management agreement, the collection-authority documents, and the default status of obligations when obtained), and its liability for the same collection course is pleaded under Counts VII and VIII.

102. Each collection communication made under a false or concealing name, within the limitations windows pleaded above, violated §§ 1692e and 1692e(14).

103. Sieverding was damaged as alleged in ¶¶ 16–21.

### COUNT VI — WISCONSIN CONSUMER ACT, WIS. STAT. § 427.104(1)(j), WITH § 427.104(1)(c), (h), AND (k) SUB-THEORIES (CONDITIONAL / PRESERVED)

**(Against Mantei, LLC and Apex only)**

104. Plaintiff realleges and incorporates ¶¶ 1–63. This Count is pleaded against the merchant side only — Mantei and Apex — and not against the Firm or Koritzinsky, preserving the violation-by-violation separation stated in ¶ 128.

105. Wis. Stat. § 427.104(1)(j) prohibits a debt collector from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist." The provision "prohibits … attempting to collect a debt when it knows or has reason to know that it has no right to collect that debt," *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶ 32, 346 Wis. 2d 635, 829 N.W.2d 522, and *Kirk* held the statute violated by the filing of the

27

collection action itself, *id.* ¶ 36. Subsections (1)(c), (h), and (k) separately prohibit disclosing or threatening to disclose information adversely affecting the customer's reputation for credit worthiness with reason to know of its falsity ((1)(c)), oppressive or harassing conduct ((1)(h)), and communications simulating legal process or a governmental or attorney authorization they lack ((1)(k)).

**106.** Mantei and Apex, through the collection course alleged above, claimed and attempted to enforce rights they knew or had reason to know did not exist: demanding $880 monthly and other sums under an instrument void and unenforceable under Wis. Stat. § 704.44 (¶¶ 24–28); asserting and adopting the double-rent theory (R.162; R.191); dunning the departed co-occupant (R.14; R.87); retaining the $190 (R.137; R.138); disabling the payment portal the day after the counterclaim filing (¶ 44); and procuring the ban letter copied to the Madison Police Department (R.110), conduct also reached by the (1)(c), (h), and (k) sub-theories. The gravamen of this Count is that enforcement conduct itself — the claiming, attempting, and threatening — not the mere presence of any particular clause in the instrument.

**107.** This Count is pleaded in the alternative, as Rule 8(d)(2)-(3) expressly permits: if, contrary to Counts I-IV's premise, any enforceable rent obligation existed, then at all relevant times Mantei was a "merchant" and the purported obligation arose from a consumer transaction concerning Sieverding's residence; Apex acted as Mantei's collection agent. Each is a "debt collector" within Wis. Stat. ch. 427 as applied to this conduct.

**108. Candor disclosure.** In *Koble Investments v. Marquardt*, 2026 WI 19, ¶¶ 8, 31, the Wisconsin Supreme Court held Wis. Stat. § 427.104(1) inapplicable to a residential lease under which rent is payable on a monthly basis, holding that such "a residential lease under which rent is payable on a monthly basis is not 'an agreement to defer payment'" within the Wisconsin Consumer Act's definitions, *id.* ¶ 8 — the lease there was a one-year lease under which rent was payable monthly. *See Koble Investments v. Marquardt*, 2024 WI App 26, 412

28

Wis. 2d 1, 7 N.W.3d 915, *rev'd*, 2026 WI 19. Plaintiff discloses that holding and pleads this Count on facts *Koble* did not present, as stated in ¶¶ 109–116 — and conditionally: unless that holding is confined by the Wisconsin Supreme Court (a question Sieverding has preserved in the pending state appellate track), it may foreclose the ch. 427 chassis of this Count. The Count is maintained with that disclosure to preserve the claim, consistent with the contemporaneous motion to stay merits proceedings pending the state appellate mandates; the deposit claim formerly folded into this Count is pleaded independently, and without any ch. 427 dependency, as Count VII.

**109.** First, the instrument Defendants enforced purported to carry a rent-acceleration device — the Concession Addendum (R.19; ¶ 26) — a purported agreement to defer and to accelerate payment, structurally unlike the month-by-month contemporaneous rent obligation *Koble* addressed, and presenting a question *Koble* ¶ 31 did not decide. This distinction is pleaded as a distinction; the weight of this Count rests on the § 427.104(1)(j) enforcement conduct alleged in ¶ 106.

**110.** Second, Defendants' own enforcement record reflects a twelve-month-arrangement posture (¶ 29): the deposited-check memo "12 Month lease August Rent," the Special Conditions document (R.119), and the Bosben email (R.16 p.5). These facts are pleaded solely as what Defendants demanded and enforced; consistent with ¶ 30, Plaintiff concedes no valid lease and no tenancy.

**111. Timeliness.** Under Wis. Stat. § 425.307(1), a customer action is timely commenced within one year after the date of the last violation of chs. 421 to 427. The last violations here include the October 29, 2025 communication (R.191), the continuing retention of the $190 and deposit-related sums, and any 2026 collection conduct — bringing the entire 2025 course of conduct alleged above within this Count.

**112. Post-judgment component.** After the August 8, 2025 judgment, Defendants returned only $425 — a partial security-deposit refund check, mailed September 10, 2025, that Sieverding cashed — unaccompanied by the security-deposit disposition statement § ATCP 134.06(4) requires as the precondition to claiming any deduction, and excluding the $1,570 in July and August 2025 advance rent payments that constitute part of the security deposit under Wisconsin law. Defendants retained the balance without the required accounting and withheld personal property including medication (R.179). This component accrues from its own post-judgment dates and rests entirely on conduct occurring after — and therefore not contained in — the counterclaims Sieverding pleaded on July 25, 2025 in the eviction action.

**113.** To the extent the post-judgment component states a violation of an order issued under Wis. Stat. § 100.20, Plaintiff will seek twice the amount of his pecuniary loss on that component, Wis. Stat. § 100.20(5), which doubles the entire pecuniary award, *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶¶ 4, 21–22, 308 Wis. 2d 103, 746 N.W.2d 762. This doubling is sought only on the post-judgment, new-violation component described in ¶ 112, and not on any violation contained in the July 25, 2025 counterclaims.

**114.** For each violation of § 427.104(1), Plaintiff is entitled to actual damages and statutory recovery under Wis. Stat. § 425.304, and to costs and reasonable attorney fees as permitted by Wis. Stat. § 425.308(1).

**115.** Plaintiff's WCA recovery is subject to Wis. Stat. § 425.301(4): for any single violation, liability under the Wisconsin Consumer Act is in lieu of, and not in addition to, liability under the federal Consumer Credit Protection Act. Plaintiff pleads this Count and the FDCPA counts against distinct violation sets and, where any overlap is found, elects violation-by-violation as stated in ¶ 128.

**116.** Sieverding was damaged by each violation as alleged in ¶¶ 16–21, including the retained and exacted sums, the out-of-pocket losses, and the post-judgment unaccounted retention.

**117.** Nothing in this Count re-pleads any counterclaim pending in Dane County Case No. 2025SC004417 or the consolidated appeals; the violation sets are disjoint as alleged in ¶¶ 112–119 and ¶ 127.

### COUNT VII — WIS. ADMIN. CODE § ATCP 134.06(2), (4); WIS. STAT. §§ 704.28, 100.20(5): SECURITY-DEPOSIT RETENTION WITHOUT TIMELY RETURN OR ACCOUNTING

**(Against Mantei, LLC and Apex)**

**118.** Plaintiff realleges and incorporates ¶¶ 1–63, and in particular ¶¶ 16, 19, and 38. This Count arises under Wisconsin's administrative-order regime, not Wis. Stat. ch. 427, and is unaffected by any ch. 427 coverage question (¶ 108).

**119.** Sieverding's security deposit comprised the named $425 deposit (R.176:1; R.179:1-2) and the $1,570 in July and August 2025 rent payments. Those sums were paid more than one month in advance when tendered (¶¶ 36-37); and once Defendants declared on June 30, 2025 that they were "proceeding with the previously issued 28-day notice" while keeping the money (¶ 38; R.137), the funds ceased to be rent for any term Defendants recognized and stood, in their hands, as rent payments in excess of one month's prepaid rent — part of the "security deposit" as defined by Wis. Admin. Code § ATCP 134.02(11), which "includes all rent payments in excess of 1 month's prepaid rent."

**120.** Within twenty-one days after Defendants learned of Sieverding's removal under the writ (executed in August 2025, R.176), such that the twenty-one-day period expired no later than September 15, 2025 (¶ 19), § ATCP 134.06(2) and Wis. Stat. § 704.28(4) required Defendants to return the security deposit or deliver a written statement itemizing any amounts withheld; § ATCP 134.06(4) makes that disposition statement the precondition to claiming any deduction.

**121.** Defendants did neither in time nor in form. The $1,380 check they tendered on June 30, 2025 was voided by Sieverding and returned to their counsel (¶¶ 16, 38); Defendants

31

re-absorbed those funds and held the full $1,570 at the writ's execution — the 21-day trigger. After that deadline passed, they sent only a $425 partial-refund check, with no disposition statement ever delivered or mailed to Sieverding's last-known address — as his contemporaneous filed notice documents ("no itemized disposition, no explanation, and not even a memo on the check," R.179, filed September 30, 2025) — and retained the $1,570 balance without any accounting (¶¶ 16, 19; R.179).

122. Where a landlord withholds a deposit without the required accounting, the entire withheld deposit is the tenant's pecuniary loss, without offset for any counterclaim the landlord might assert. The withholding violates an order issued under Wis. Stat. § 100.20; Sieverding is entitled to twice the amount of his pecuniary loss, plus costs and any fee award permitted by law for a pro se party, under Wis. Stat. § 100.20(5).

123. This Count accrues from the post-judgment disposition dates and rests entirely on conduct occurring after — and therefore not contained in — the counterclaims Sieverding pleaded on July 25, 2025 in the eviction action. The Wisconsin Supreme Court's decision in *Koble Investments v. Marquardt*, 2026 WI 19, ¶¶ 26-27, expressly preserves § 100.20(5) recovery for deposit-type violations on proof of amounts actually paid; every dollar here is documented (¶¶ 16, 19; R.137; R.179).

124. Sieverding was damaged in the amount of the unreturned, unaccounted deposit, doubled by statute, as alleged above.

## CLAIM-SEPARATION AND NON-REVIEW ALLEGATIONS

125. The injuries alleged in this Complaint flow from Defendants' own collection conduct — their letters, demands, deposits, retentions, threats, and misstatements — not from any state-court judgment. No count seeks review, reversal, or modification of any order of any court.

126. No claim or issue pleaded here was decided in the eviction action: the judgment was for possession only, $0.00 (R.147), and the record confirms the counterclaims were never decided (R.191; R.196; R.211). The Firm, Koritzinsky, and Apex were parties to no relevant state-court case — as Defendants' own July 28, 2025 letter states of the Apex entities, they were "not parties" (R.25).

127. This action pleads no count Sieverding has pleaded elsewhere: his six counterclaims remain pending, undecided, in Case No. 2025SC004417 and the consolidated appeals, and are not re-pleaded here; the deposit conduct pleaded in Count VII is post-judgment conduct those counterclaims could not contain. This action names different defendants (the Firm, Koritzinsky, and Apex have never been parties opposite Sieverding), rests on different statutes (the federal FDCPA, never pleaded anywhere by Sieverding before this action; ch. 427 conduct violations; and the ATCP 134 deposit order), and seeks money damages only.

128. **Election.** For any single violation as to which both federal and Wisconsin Consumer Act liability might attach to the same defendant, Plaintiff elects to recover under one statute only, violation by violation, consistent with the single-recovery rule of Wis. Stat. § 425.301(4). Counts IV (as to Mantei/Apex in the alternative), VI, and VII are pleaded in the alternative to one another to that extent; Count VII is an ATCP/§ 100.20(5) claim outside that election.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Edward A. Sieverding respectfully requests that the Court enter judgment against Defendants, jointly and severally as the proof supports, awarding:

A. Actual damages under 15 U.S.C. § 1692k(a)(1), including the $1,570 retained (¶ 16), the monthly $95 sums exacted and paid, the deposit amounts withheld after judgment without the itemized accounting Wisconsin law requires (¶ 19), itemized out-of-pocket losses, to be itemized in discovery, and — solely in addition to those economic injuries — any provable attendant distress;

33

**B.** Statutory damages of up to $1,000 against each Defendant found liable under 15 U.S.C. § 1692k(a)(2)(A), or such statutory damages as the Court determines;

**C.** Costs of this action, and reasonable attorney fees as permitted by law, under 15 U.S.C. § 1692k(a)(3);

**D.** On Count VI: actual damages and statutory recovery under Wis. Stat. § 425.304; costs and reasonable attorney fees as permitted by Wis. Stat. § 425.308(1); and, on the post-judgment component only (¶¶ 112–119), twice the amount of pecuniary loss under Wis. Stat. § 100.20(5);

**E.** On Count VII (the security deposit): recovery of the unreturned and unaccounted deposit — the $425 named deposit and the $1,570 in excess prepayments held as deposit under ATCP 134.02(11) (a combined $1,995) — doubled under Wis. Stat. § 100.20(5) to $3,990, or such amounts as the proof supports, together with costs and reasonable attorney fees under § 100.20(5);

**F.** Pre-judgment and post-judgment interest as permitted by law;

**G.** Such other monetary and declaratory relief as is just; and

**H.** Plaintiff does not seek restoration of possession, vacatur of any writ or judgment, or review of any state-court order.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Fed. R. Civ. P. 38(b), endorsed on this Complaint.

## VERIFICATION / SIGNATURE

I declare under penalty of perjury that the foregoing factual allegations are true and correct to the best of my knowledge, information, and belief.

Executed on July __7__, 2026.

34

Edward A. Sieverding, pro se

31 Majestic Ave, Pelham, NH 03076

ed.sieverding@gmail.com · Tel.: 608 313-4616